UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 09 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ASSOCIATION OF CHRISTIAN
SCHOOLS INTERNATIONAL; et al.,

          Plaintiffs - Appellants,

  v.

ROMAN STEARNS, in his official
capacity as Special Assistant to the
President; et al.,

          Defendants - Appellees.

No. 08-56320

D.C. No. 2:05-cv-06242-SJO-MAN
U.S. District Court for Central
California, Los Angeles

MANDATE

RECEIVED
CLERK, U.S. DISTRICT COURT

MAR - 9 2010

CENTRAL DISTRICT OF CALIFORNIA
BY              DEPUTY

The judgment of this Court, entered January 12, 2010, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

                                      FOR THE COURT:

                                      Molly C. Dwyer
                                      Clerk of Court

                                      Synitha Walker
                                      Deputy Clerk

**FILED**

**NOT FOR PUBLICATION**

JAN 12 2010

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ASSOCIATION OF CHRISTIAN SCHOOLS INTERNATIONAL; CALVARY CHAPEL CHRISTIAN SCHOOL, a Division of Calvary Chapel of Murrieta, Inc.; A. T., by and through parent G. Tally (substituted for M.T., by and through parent T. Taylor, by Order entered Nov. 14, 2006); J. G., by and through parent A. Guzon, and T.C., by and through parent J. Cherney (substituted for C. Young, by Order entered Nov. 14, 2006); K. B., by and through his parent D. Brodmann; G. S., by and through his parent K. Shean; S. O., by and through her parent D. Ono; W. L., by and through his parent W. Lotherington,<br><br>        Plaintiffs - Appellants,<br><br>v.<br><br>ROMAN STEARNS, in his official capacity as Special Assistant to the President; SUSAN WILBUR, in her official capacity as Director of Undergraduate Admissions; JUDY SAKAKI, in her official capacity as Associate Vice President for Student | No. 08-56320<br><br>D.C. No. 2:05-cv-06242-SJO-MAN<br><br>MEMORANDUM[*] |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

| |
|---|
| Academic Services (substituted for Dennis Galligani); ROBERT C. DYNES, in his official capacity as President of the University of California; MARK RASHID, in his official capacity as Chair of Board of Admissions & Relations with Schools (BOARS) (substituted for Michael Brown, <br><br>                Defendants - Appellees. |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted December 7, 2009
Pasadena, California

Before: HALL, THOMPSON and SILVERMAN, Circuit Judges.

The plaintiffs are the Association of Christian Schools International ("ACSI"), Calvary Chapel Christian School ("Calvary"), and five Calvary students (collectively, "the plaintiffs"). They allege that the University of California ("UC") admission policy, which involves UC's review and approval of high school courses in order to qualify applicants for UC admission, is unconstitutional under the Free Speech, Free Exercise, Establishment, and Equal Protection Clauses. The defendants, Roman Stearns, Susan Wilbur, Robert Dynes, Mark Rashid, and Judy Sakaki (collectively, "the defendants"), are the UC employees responsible for

developing and implementing the course approval policy. The district court determined that UC's policy was constitutional on its face and as-applied and granted summary judgment in favor of the defendants on all claims. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

I. **The Level of Judicial Scrutiny**

The Supreme Court has rejected heightened scrutiny where, as here, the government provides a public service that, by its nature, requires evaluations of and distinctions based on the content of speech. *See United States v. American Library Ass'n, Inc.*, 539 U.S. 194, 203-208 (2003) ("ALA"); *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580-87 (1998); *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 673-74 (1998). As a university, one of UC's "essential freedoms" is to "determine for itself on academic grounds . . . who may be admitted to study." *Sweezy v. State of N.H. by Wyman*, 354 U.S. 234, 263 (1957) (Frankfurter, J., concurring). UC exercises that freedom by reviewing high school courses to ensure that they adequately prepare incoming students for the rigors of academic study at UC.

The plaintiffs' reliance on forum cases which apply heightened scrutiny is misplaced. *See Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819 (1995); *Widmar v. Vincent*, 454 U.S. 263 (1981); *Bd. of Regents of Univ. of*

*Wisconsin System v. Southworth*, 529 U.S. 217 (2000). The plaintiffs concede that this case does not involve a forum. Nor does this case present a "close analogy" to forum cases as in *Southworth*. Here, UC evaluates high school courses to ensure they are college preparatory, not to facilitate "the free and open exchange of ideas by, and among, its students." *Southworth*, 529 U.S. at 229-30. The forum cases are simply inapposite. *See ALA*, 539 U.S. at 206-07 (distinguishing *Rosenberger* because a "public library does not acquire Internet terminals in order to create a public forum for Web publishers to express themselves."); *Finley*, 524 U.S. at 586 ("The NEA's mandate is to make esthetic judgments, and the inherently content-based 'excellence' threshold for NEA support sets it apart from the subsidy at issue in *Rosenberger* . . . .").

## II. The Plaintiffs' Facial Challenge

The plaintiffs have not alleged facts showing any risk that UC's policy will lead to the suppression of speech. *Finley*, 524 U.S. at 580 (To prevail on a facial challenge, a plaintiff "must demonstrate a substantial risk that application of the provision will lead to the suppression of speech"). Nor can they. It is undisputed that UC's policy does not prohibit or otherwise prevent high schools, including Calvary, from teaching whatever and however they choose or students from taking any course they wish. High schools can, and do, continue to teach courses even

when they are denied UC approval. UC does not punish a school for teaching, or a student for taking, an unapproved course. *Cf. R.A.V. v. City of St. Paul*, 505 U.S. 377, 391, 393 (1992) (invalidating an ordinance that set forth a clear penalty, proscribed views on particular disfavored subjects and suppressed distinctive ideas conveyed by a distinctive message).

The plaintiffs devote much of their appeal to arguing that UC's policy on religion and ethics courses constitutes viewpoint discrimination. This policy provides that in order to receive UC approval, religion and ethics courses should "treat the study of religion or ethics from the standpoint of scholarly inquiry, rather than in a manner limited to one denomination or viewpoint." Aside from pointing out that UC's policy includes the word "viewpoint," the plaintiffs fail to allege facts showing that this policy is discriminatory in any way. It is not. As UC's expert explained, UC's policy is necessary because the "academic study of religion is multidisciplinary in nature" and "[p]rivileging one tradition or point of view is considered unacceptable and counter-productive in the scholarly study of religion at UC and similar colleges and universities."

Going beyond UC's written policies, the plaintiffs contend that UC has a well established practice of rejecting courses with standard content solely because they add a religious viewpoint. *See, e.g., Santa Monica Food Not Bombs v. City of*

*Santa Monica,* 450 F.3d 1022, 1035 (9th Cir. 2006) (in a facial challenge, the court commonly considers the government's "authoritative interpretation of its guidelines" if it is a "well-established practice"). The evidence, however, is to the contrary. It is undisputed that UC has approved courses with religious content and viewpoints as well as courses that used religious textbooks as the primary and secondary course texts.

### III.  The Plaintiffs' As-Applied Challenge

As an initial matter, the district court correctly concluded that ACSI lacks associational standing to assert as-applied claims on behalf of its member schools that are not parties to this lawsuit.[1] ACSI cannot satisfy the third prong of the Supreme Court's associational standing test, which mandates that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343 (1977). The plaintiffs' as-applied claims and the relief they seek, although equitable in nature, both require "individualized proof" specific to

---

[1] The plaintiffs do not contend that ASCI has associational standing to assert claims on behalf of non-ASCI member schools which had courses rejected by UC, including the Catholic and Jewish school courses the plaintiffs and amici repeatedly discuss in their briefs.

each rejected course and the school that offered it. *Hunt*, 432 U.S. at 343; *Warth v. Seldin*, 422 U.S. 490, 515-16 (1975).[2]

Because ACSI lacks associational standing to bring as-applied claims on behalf of non-party member schools, the plaintiffs' as-applied challenge is limited to the four Calvary courses that were denied UC approval. The district court correctly determined that UC's rejections of the Calvary courses were reasonable and did not constitute viewpoint discrimination. The plaintiffs offer no facts or evidence to disturb this conclusion. UC's rejection letters and internal meeting notes demonstrate that UC denied approval not because the courses added a religious viewpoint, but because they were either not college preparatory, lacked necessary course information or materials, or had other procedural defects which Calvary never bothered to cure.

Alternatively, the plaintiffs contend that issues of fact exist with respect to their as-applied challenge which preclude summary judgment. The plaintiffs, however, have forfeited this argument. Instead of identifying the factual issues and asserting arguments as to why they were material, the plaintiffs merely provide a

---

[2] Because we conclude that ACSI lacks associational standing, we need not address the district court's additional decision that the plaintiffs waived as-applied challenges for non-Calvary courses that were not timely disclosed. The plaintiffs lack standing to assert as-applied claims based on non-Calvary courses regardless of whether they were timely disclosed.

table of citations to various declarations, affidavits, exhibits and depositions relating to each rejected course, leaving this court to "piece together" their argument. *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (holding that the plaintiff forfeited its preemption claims on appeal where it provided a "five page laundry list of the challenged regulations and their titles, leaving the court to piece together the argument for preemption as to each regulation"). The district court properly rejected the plaintiffs' as-applied challenge.

## IV. The Plaintiffs' Additional Arguments

The plaintiffs assert a myriad of legal arguments attacking the district court's decision, all of which lack merit. We address each in turn.

### A. Animus

The plaintiffs contend that the district court erred by requiring them to show evidence of animus in order to succeed on their claims under the Free Speech and Establishment Clauses. The district court, however, did not require animus under the Establishment Clause. Nor did it require animus under the Free Speech Clause as the plaintiffs contend; instead, it held that a showing of animus could render an otherwise reasonable policy unconstitutional. *See Finley*, 524 U.S. at 587.

**B.     The "Unbridled Discretion" Doctrine**

Next, the plaintiffs argue that the district court erred by limiting the unbridled discretion doctrine to licensing and prior restraint cases. We need not, however, resolve the scope of this doctrine. *See Ward v. Rock Against Racism*, 491 U.S. 781, 793 (1989) (noting that the scope of the doctrine is "far from clear"). We affirm the district court's decision based on its alternative holding that, assuming the doctrine applies, UC provides sufficient guidance for course review to defeat a challenge of unbridled discretion.

**C.     The "Primary Effect" Prong of the *Lemon* Test**

The plaintiffs mistakenly argue that the district court erred by inventing a "primary effect" standard under the Establishment Clause. The district court did not invent the "primary effect" language. The Supreme Court used that language in *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971). As we have explained, the "second prong of *Lemon* bars governmental action that has the 'principal or primary effect' of advancing or disapproving of religion." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1256 (9th Cir. 2007) (quoting *Lemon*, 403 U.S. at 612).

**D.     The "Hybrid-Rights" Doctrine**

The plaintiffs contend that the district court erred by not applying strict scrutiny to their free exercise claim under the so-called hybrid-rights doctrine. Yet the plaintiffs offer no reason to depart from our recent decision in *Jacobs v. Clark County Sch. Dist.*, 526 F.3d 419, 440 n.45 (9th Cir. 2008) where we "declin[ed] to be the first" court to allow a "plaintiff to bootstrap a free exercise claim" using the hybrid-rights doctrine. *Id.*

The plaintiffs' contention that the district court misread *Sherbert v. Verner*, 374 U.S. 398 (1963) in its discussion of the Free Exercise Clause is irrelevant. The plaintiffs do not and cannot challenge the crux of the district court's rejection of their free exercise claim—that UC's policies were more akin to the civil regulation that was upheld in *Locke v. Davey*, 540 U.S. 712 (2004) than the criminal prohibition that was invalidated in *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993).

### E.  The Equal Protection Clause

The district court properly applied rational basis scrutiny to the plaintiffs' equal protection claim. *See Locke*, 540 U.S. at 721 n.3 ("Because we hold . . . that the program is not a violation of the Free Exercise Clause, however, we apply rational-basis scrutiny to his equal protection claims.") (citations omitted). The plaintiffs nevertheless argue that strict scrutiny applies because religion is a suspect

class. Courts, however, only apply strict scrutiny when distinctions are made on the basis of a suspect class, like religion. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001).

The record is devoid of any evidence showing that UC discriminates on the basis of religion. UC's course approval policy is the same for all in-state applicants, regardless of religion. The plaintiffs do not contend that any student has been denied UC admission based on the student's religion. Nor do they contend that any student has been denied eligibility based on UC's rejection of a high school course. UC's policy and its individual course decisions are not based on religion, but on whether a high school course is college preparatory. As the defendants point out, whether a course is college preparatory is not a suspect classification; therefore, the Equal Protection Clause requires only that UC's distinctions be rational.

### F.     The 150 Rejected Courses and the "Overbreadth" Doctrine

The plaintiffs argue that the district court erred by "entirely ignoring" evidence that UC rejected over 150 courses from religious high schools (the majority of which are not plaintiffs in this case) and by refusing to apply the overbreadth doctrine. To the contrary, the district court expressly recognized the

laundry list of 150 rejected courses proffered by the plaintiffs and concluded it was irrelevant because the plaintiffs did "not provide an analysis as to why any of the more than 150 courses rejected by UC should have been approved."

That the district court did not specifically address the rejected courses in its analysis of the overbreadth doctrine does not constitute error. The plaintiffs' list of 150 rejected courses, without any supporting analysis, does not raise a genuine issue of material fact with respect to whether UC's policy "punishes a 'substantial' amount of protected free speech" in violation of the overbreadth doctrine. *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003). The plaintiffs failed to provide any evidence of punishment, or even a chilling effect, because high schools are free to continue teaching the courses even if UC denies approval.

### G. The Plaintiffs' Additional Expert Affidavits

The plaintiffs contend, without support, that the district court erred in excluding "certain opinions" in its additional expert affidavits. The plaintiffs do not specify which opinions in the affidavits were improperly excluded, nor do they explain why the exclusions were erroneous, and have therefore failed to preserve this argument. *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief .... We will not manufacture arguments for an appellant,

-12-

and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review.").

**AFFIRMED.**